**PERNELL ANTHONY DECK, SR.,**

       **Plaintiff,**

**v.**                                   **Civil Action No. 1:15cv159**
                                             **(Judge Keeley)**

**JAMES RUBENSTEIN, Commissioner**
**of Corrections; DR. POLICARPIO,**
**Doctor Under Contract with D.O.C./**
**Wexford; PAT MIRANDY, Warden,**
**St. Marys; and MILESSA WADSWORTH,**
**Health Service Administrator/Wexford**

       **Defendants.**

## REPORT AND RECOMMENDATION

### I.   Procedural History

On September 10, 2015, the *pro se* plaintiff, Pernell Anthony Deck, Sr. ("Deck"), an inmate at St. Marys Correctional Center ("SMCC") in St. Marys, West Virginia, initiated this civil rights action pursuant to 42 U.S.C. §1983. Along with his Complaint, Deck filed a motion to proceed *in forma pauperis* with supporting documents. By Order entered September 14, 2015, Deck was granted leave to proceed IFP but directed to pay an initial partial filing fee ("IPFF"). On October 2, 2015, the plaintiff paid the IPFF.

On October 13, 2016, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Summonses were issued that same day. On November 9, 2015, Defendants Pat Mirandy ("Mirandy") and James Rubenstein ("Rubenstein") filed a Motion to Dismiss with a memorandum in support. Because Plaintiff was proceeding *pro se,* on November 10, 2015, a <u>Roseboro</u> Notice was issued. Also on November 10, 2015, Defendants Dionisio Policarpio ("Policarpio") and Milessa Wadsworth, RN, Health Services Administrator ("HSA")("Wadsworth") filed a Motion to Dismiss with a memorandum in support. Another <u>Roseboro</u> Notice was issued, advising the Plaintiff of his right to file a response to the dispositive

motion. On December 3, 2015, the plaintiff filed a response in opposition to Mirandy and Rubenstein's Motion to Dismiss, and on December 9, 2015, he filed a response in opposition to Policarpio and Wadsworth's Motion to Dismiss. A review of the record on March 21, 2016 indicated both of Plaintiff's responses to the defendants' dispositive motions were unsigned. Accordingly, by Order entered March 22, 2016, Plaintiff was directed to refile signed copies of the same. On March 29, 2016, Plaintiff refiled signed copies of his responses in opposition to the defendants' motions to dismiss.[1]

This case is before the undersigned for a Report and Recommendation on the defendants' dispositive motions.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, the plaintiff asserts a claim of deliberate indifference to his serious medical needs claims against the defendants for their failure to dispense or administer prescribed medications for his pre-existing degenerative spinal problems, including bulging and/or herniated discs and chronic shoulder and back pain. Plaintiff contends he is in continuous pain; is losing the feeling in his legs; suffers constant headaches; memory loss; and mental anguish.[2] In an unsworn, unsigned one-page typewritten affidavit attached to his Complaint, construed here as a memorandum in support, he further alleges that SMCC defendants and Wexford Medical Sources, Inc. personnel ignored his grievances over the same, sidestepped the issues and provided non-responsive answers to his requests, merely "rubber stamping" grievances in hopes that they would go away.[3]

---

[1] See Plaintiff's Response to Defendant Rubenstein and Mirandy's Motion to Dismiss, Dkt.# 35 and Plaintiff's Response to Defendants Policarpio's and Wadsworth [sic] Motion to Dismiss, Dkt.# 36.

[2] Dkt.# 1 at 9.

[3] Dkt.# 1-1 at 1.

The plaintiff contends he has fully exhausted his administrative remedies and attaches what is apparently partial proof of the same.[4]

As relief, he seeks a jury trial, punitive damages, and reimbursement of all fees/costs in this matter.  Further, he requests  injunctive relief in the form of immediate attention from a specialist and an investigation of the medical department at SMCC.[5]

**B.  Defendants Pat Mirandy and James Rubenstein's Motion to Dismiss**

In their motion, Defendants Mirandy and Rubenstein argue that the plaintiff's complaint should be dismissed because

1) plaintiff has failed to state a § 1983 claim upon which retroactive monetary or equitable relief can be granted;

2) the 11th Amendment bars Plaintiff's request for monetary relief from the state defendants;

3) the state defendants are not "persons" who can be sued under 42 U.S.C. § 1983; and

4) the state defendants are entitled to qualified immunity.

**C. Plaintiff's Response in Opposition to Defendants Mirandy and Rubenstein's Motion to Dismiss**

In his unsigned response, Plaintiff reiterates his arguments and attempts to refute Defendants Mirandy and Rubenstein's on the same.

**D.  Defendant Dr. Policarpio and Milessa Wadsworth RN's Motion to Dismiss**

Defendants Policarpio and Wadsworth contend that the plaintiff's complaint should be dismissed because

1) Plaintiff has failed to allege any claims against either Dr. Policarpio or Milessa Wadsworth;

2) the allegations of the Complaint fail to allege the necessary factual predicate for a claim of deliberate indifference; and

---

[4] Dkt.# 1 at 5, Dkt.# 1-2 at 1 – 3.  However, in Plaintiff's response in opposition to Defendant Policarpio and Wadsworth's motion to dismiss, Plaintiff references four grievances by number.  See Dkt.# 36 at 5 – 6. Not all of these grievances are attached to the Complaint.

[5] Dkt.# 1 at 9.

3) the plaintiff has failed to comply with the West Virginia Medical Professional Liability Act ("WVMPLA"), West Virginia Code Chapter 55, Article 7B.

**E.  Plaintiff's Response in Opposition to Defendant Policarpio and Wadsworth's Motion to Dismiss**

In his response, the plaintiff reiterates his arguments and attempt to refute Policarpio and Wadsworth's responses to the same. He more clearly describes his medical ailments as "chronic back and shoulder pain due to a hernia disk [sic], bulging disk and degenerative disease in the spinal cord. The shoulder has bone spurs that are extremely painful and require treatment."[6] For the first time, he asserts specific allegations of deliberate indifference against both Policarpio and Wadsworth. He argues that because he is asserting a claim of deliberate indifference, compliance with WVMPLA is not required. He avers that he has repeatedly requested that the Defendants obtain his prior medical records from outside hospitals, which would prove his past medical history and present condition. He claims he was prescribed medications that were never dispensed but was charged for the same anyway. Finally, he alleges that Defendant Wadsworth's response to one of his grievances was not even addressed to him, but rather, to another inmate.

### III.  Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

---

[6] Dkt.# 36 at 5.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (<u>Id</u>). (citations omitted), to one that is "plausible on its face," (<u>Id</u>). at 570, rather than merely "conceivable." (<u>Id</u>). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I. DuPont de Nemours & Co</u>., 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp</u>., 309 F.3d 193, 213 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (<u>Id</u>).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff is proceeding *pro se*, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

## IV.  Analysis

### A. Eleventh Amendment Immunity

Defendants Mirandy and Rubenstein contend that the Complaint should be dismissed because the "Eleventh Amendment to the United States Constitution bars suits in federal court by private parties seeking to impose liability upon a State or State officials, which may be paid from public funds in the state treasury."[7]

While a suit instituted under § 1983 against state officials in their official capacity is barred by the Eleventh Amendment because it seeks money from the state treasury, Will v. Michigan Dep't of St. Police, 491 U.S. 58 (1989), suits against state officials sued in their individual capacity are not barred. See Hafer v. Melo, 502 U.S. 21 (1991); Goodman v. Rockefeller, 947 F.2d 1186, 1187 (4th Cir. 1991).

---

[7] Dkt.# 15 at 4.

Defendants Mirandy and Rubenstein's argument that Plaintiff's Complaint should be dismissed because they are entitled to immunity under the Eleventh Amendment is based on an incorrect and incomplete reading of §1983 case law. As noted *supra*, the Eleventh Amendment only bars a § 1983 suit based on monetary damages against state officials when sued in their official capacity. Here, nothing in the complaint states that the Defendants are being sued *only* in their official capacity. To the contrary, Plaintiff's Complaint and response to Rubenstein and Mirandy's dispositive motion specifically says otherwise.[8] Accordingly, because the Eleventh Amendment does not bar Plaintiff's § 1983 claims for prospective injunctive relief or for damages against Defendants in their individual capacities, the Court finds no merit in this ground for dismissal.

**B. <u>Qualified Immunity</u>**

The defendants assert that both defendant Mirandy and Rubenstein are entitled to qualified immunity.

State officials are considered "persons" within the meaning of § 1983 when sued in their individual capacities, and as such may be held personally liable for damages. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991). These claims do not require proof of any policy or custom of the entity that violated Plaintiffs' rights, and qualified immunity may be raised as a defense. By its terms, § 1983 imposes liability without defense on state and local officials who, acting under color of law in their individual capacity, deprive plaintiffs of rights created by the Constitution and federal law. Nonetheless, the Supreme Court, drawing on common law, created absolute immunity from liability for some government officials and qualified immunity for others, to protect officials from lawsuits for actions relating to their official duties. The Court explained the underlying rationale for immunity:

> [T]he public interest requires decisions and actions to enforce laws for the protection of the public . . . . Public officials, whether governors, mayors or police, legislators or judges, who fail to make decisions when they are needed or who do not act to

---

[8] Dkt.# 1 at 2; <u>see</u> <u>also</u> Dkt.# 35 at 1.

implement decisions when they are made do not fully and faithfully perform the duties of their offices. Implicit in the idea that officials have some immunity—absolute or qualified —for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all.

Scheur v. Rhodes, 416 U.S. 232, 241-42 (1974).

Qualified immunity protects public officials from personal liability unless their conduct violates clearly established constitutional law. The defense rests upon two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good. Scheur, *supra* at 240. The Supreme Court recently observed that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). In ruling on a qualified immunity defense, the undersigned must take the facts in the light most favorable to Plaintiff and determine (1) whether facts alleged or shown by plaintiff make out violation of constitutional right, and (2) if so, whether that right was clearly established at time of defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194 (2001) (overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Here, plaintiff's only specific allegations against Mirandy and Rubenstein are that they "rubber stamped" his grievances and failed to intervene when he complained about his medical care. However, to the extent that the plaintiff is asserting that Mirandy and Rubenstein were deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit, because that is not the type of personal involvement required to state a Bivens[9] claim. See Paige v. Kuprec,

---

[9] It is well established that case law under 42 U.S.C. § 1983 is applicable to Bivens actions. See Butz v. Economou, 438 U.S. 478, 504 (1978).

2003 W.L. 23274357 *1 (D. Md. March 31, 2003). Further, Warden Mirandy has no direct, day-to-day responsibility for anything within the operation of the Health Services at SMCC. Likewise, Defendant Rubenstein, as Commissioner of the West Virginia Division of Corrections, has no role in the day-to-day operations of SMCC or any other specific WVDOC jail or prison, let alone in the health service department of the same. Because the Plaintiff has not specified any specific, direct acts taken by either defendant which violated his constitutional rights, these two defendants are entitled to qualified immunity. Accordingly, any individual capacity claims against these defendants should be dismissed.

## C. Deliberate Indifference to Serious Medical Needs

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[10]

---

[10] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp.

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

---

547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A degenerative hip condition that caused a prisoner "great pain over an extended period of time and . . . difficulty walking" is a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) Beaman v. Unger, 838 F.Supp. 2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted,* 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991). Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989)(a fracture in the hip joint which required surgery was a serious medical need). Estelle v. Gamble, 429 U.S. 97, 107 (1976)(whether an x-ray and different forms of treatment should have been given for prisoner's back injury at most constituted negligence). Murphy v. Walker, 51 F.3d 714, 719 (7th Cir. 1995) (prisoner suffering severe pain after head injury was told by guard to "stop being a baby" and learn to live with the pain was entitled to go forward with a deliberate indifference claim against that guard); Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (refusal to treat a medical condition marked by the existence of chronic and substantial pain may give rise to an Eighth Amendment claim); Phillips v. Jasper County Jail, 437 F.3d 791, 796, 2006 U.S. App. LEXIS 3442, *11 (8th Cir. Mo. 2006) (knowing failure to administer prescribed medicine can itself constitute deliberate indifference); Walker v. Benjamin, 293 F.3d 1030, 1040 - 41 (7th Cir. 2002) (refusal to administer prescribed pain medication is a "gratuitous cruelty" which could constitute deliberate indifference); Victoria W. v. Larpenter, 205 F. Supp. 2d 580, 600-01 (E.D. La. 2002) (recognizing that other courts have found "serious medical needs" in herniated discs, broken jaws, life-threatening ulcers, risk of suicides, and heart attacks) (citations omitted). Scarbro v. New Hanover County, 374 Fed. Appx. 366, 371 (4th Cir. 2010) (injury from a head-first fall onto concrete, with a scream of pain and broken glasses; followed by bleeding from a cut above the eye; incontinence of urine and the inability to speak coherently or walk afterwards was an objectively serious medical need; autopsy afterward showed an acute subdural hematoma and neck fracture). But see Clark v. Maryland Dep't. of Public Safety and Correctional Services, 316 Fed. Appx. 279, 282 - 83 (4th Cir. 2009) (unpublished) *per curiam* (passing out in cell and hitting head, but able to communicate clearly afterwards, with no visible injury, sign of distress or discomfort was not a serious medical need).

A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A plaintiff must establish more than ordinary negligence on the part of prison authorities in responding to his medical needs to establish a claim of medical mistreatment under the Eighth Amendment. Brewer v. Blackwell, 836 F. Supp. 631, 642 (S.D. Iowa 1993). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

**1) James Rubenstein and Pat Mirandy**

In the Complaint, the plaintiff states that he is naming both Rubenstein and Mirandy in their "personal and individual capacity [sic],"[11] i.e., Rubenstein as the Commissioner of Corrections and Mirandy as the Warden of SMCC. Plaintiff's response in opposition to Rubenstein and Mirandy's motion to dismiss states "[t]hey are being sued in their professional and individual capacities."[12]

---

[11] Dkt.# 1 at 2.

[12] Dkt.# 35 at 1.

However, plaintiff's entire claim against each defendant appears to be that they do "not assist in the securing or proper medical care and simply evade[] the problems or rubberstamps . . . grievances [in hopes that] maybe the problem will go away."[13] It appears, then, that Plaintiff's fundamental complaint about both of these defendants is that they denied the administrative grievances he filed, seeking medical care. However, as noted *supra*, the mere fact that Mirandy and Rubenstein denied Plaintiff's administrative grievances does not state the type of personal involvement required to state a civil rights claim. See Paige v. Kuprec, *supra* at 2003 W.L. 23274357 *1.

Plaintiff has not made any credible claims that either Mirandy or Rubenstein were personally involved in the violation of his constitutional rights. Instead, despite his claim that they are being sued in their personal as well as "professional" capacities (liberally construed here to be "official capacity"), it appears that the plaintiff is actually naming Defendants Rubenstein and Mirandy only in their official capacities as the overseer of the WVDOC and the Warden of SMCC, respectively.

There is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); see also Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charges acted personally in the deprivation of the plaintiff's rights." Vinnedge, *supra.* Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of

---

[13] Dkt.# 1-1 at 1.

the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir.), <u>cert. denied</u>, 513 U.S. 813 (1994).[14]

Finally, to impose § 1983 liability on the part of these supervisory defendants would require a showing that the supervisory defendants: (1) failed promptly to provide an inmate with needed medical care . . . ; (2) deliberately interfered with the prison doctors' performance . . . ; or (3) tacitly authorized or were indifferent to the prison physicians' constitutional violations. <u>See</u> <u>Miltier</u>, *supra* at 896 F.2d 854 (citations omitted).

It is apparent from the admittedly extremely limited record that Plaintiff was provided with *some* access to SMCC's medical facilities, and he makes no claims that Mirandy and/or Rubenstein's supervising, in some capacity the provision of health care to him, interfered with a decision to provide any specific care to him. Accordingly, the Court interprets Plaintiff's Complaint as alleging the third basis of liability discussed above. The <u>Miltier</u> opinion makes it clear that in reviewing claims of medical care, supervisors are entitled to rely on the judgment of medical staff as to the course of treatment provided, because those professionals, employed to provide medical treatment to the state's prisoners, are in a far better position to know all relevant facts and properly treat inmates' medical problems. <u>Miltier</u>, *supra* at 854-55.

Because the plaintiff fails to allege any personal involvement on the part of Defendants Mirandy and Rubenstein, beyond the denial of his grievances, he does not make any allegations which reveal the presence of the required elements for supervisory liability, the plaintiff fails to state a claim against either defendant.

### 2) **Dr. Dionisio Policarpio**

---

[14] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." <u>Shaw</u>, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" <u>Id.</u>

Plaintiff's claim that Defendant Policarpio, a physician "under contract with D.O.C./Wexford," deprived him of his Eighth Amendment right to be free from cruel and unusual punishment, raises a claim under 42 U.S.C. §1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

Here, Policarpio's dispositive motion makes no mention of the status of his relationship as an employee or independent contractor with Wexford Health Sources, Inc. ("Wexford") or with the West Virginia Division of Corrections ("WVDOC"). Because Policarpio did not set forth for the undersigned the status of his relationship *vis à vis* with Wexford or the WVDOC in his own dispositive motion, from a review of this record as well as a review of a dispositive motion filed by a WVDOC Warden in another § 1983 action, the undersigned finds that because Policarpio has not denied Plaintiff's contention that he is an employee of Wexford,[15] and Wexford is an independent contractor, contracted with the WVDOC to staff the medical departments in the various WVDOC facilities to provide medical services to inmates,[16] then, as a health care provider working for

---

[15] Dkt.# 1 at 2.

[16] The dispositive motion and memorandum in support filed by Marvin Plumley, the Warden of Huttonsville Correctional Center ("HCC"), in another § 1983 action, averred that the named defendant medical employees in that case, a doctor and a Health Services Administrator who worked at HCC were employees of Wexford Health Sources, Inc. and therefore were

Wexford at the SMCC, defendant Policarpio was acting under color of state law, and thus he stands in the shoes of a state actor.

The undersigned agrees with Defendant Policarpio that in the Complaint, Plaintiff makes no specific allegations against him and provides practically no factual support for his claims. At best, the Court can merely guess from Plaintiff's Complaint and its attached affidavit/memorandum that he is alleging a deliberate indifference claim against Policarpio and Wadsworth for lack of medical treatment. Further, the Complaint fails to specifically assert how each defendant was involved in the alleged lack of treatment. However, in his response to Policarpio and Wadsworth's dispositive motion, for the first time, Plaintiff provides detailed specific allegations in support of his claims. Because Plaintiff is proceeding *pro se*, he is entitled to liberal construction of his pleadings, and so the claims in his response will be given review.

In the affidavit/memorandum attached to his Complaint, Plaintiff avers that he has had prior treatment at the Veterans' Hospitals in St. Clairsville, Ohio and Pittsburgh, Pennsylvania; MRIs performed at Ohio Valley Medical Center ("OVMC") in Wheeling, West Virginia, and has received physical therapy at "Martin's Ferry Regional Hospital [sic][17] in Martin's Ferry, Ohio."[18] Plaintiff contends that Policarpio is the only medical provider he had access to at SMCC;[19] Policarpio is responsible for writing prescriptions and ensuring that medications are doing their intended job;[20] Policarpio twice prescribed Naproxen[21] to Plaintiff, but did not dispense the same (but Plaintiff was

---

employees of "an independent contractor, not under the control of the Warden." See Case No. 3:13cv100, Dkt.# 30, ¶4 at 2, Dkt.# 31 at 2; and Dkt.# 42, ¶3.

[17] Martins Ferry Hospital is now East Ohio Regional Hospital.

[18] Dkt.# 1-1 at 1.

[19] Dkt.# 36 at 1 – 2.

[20] Dkt.# 36 at 3.

[21] Naproxen, a non-steroidal anti-inflammatory ("NSAID"), works by reducing hormones that cause inflammation and pain in the body. It is used to treat pain or inflammation caused by conditions such as arthritis, ankylosing

charged for the medication nevertheless);[22] and that Policarpio refuses to acknowledge that Plaintiff has had prior treatment for his spinal problems at outside hospitals, review those records,[23] and/or send for those records.[24] Plaintiff contends that Policarpio's response to his requests that his previous records be sent for is "I the doctor [sic].  I know what you need!"[25] Further, Plaintiff alleges that both Policarpio and Wadsworth are "merely acting the part of competent medical professionals who create a tangible record with visits to weight or take vitals and the patients receive no competent care for the ailments they suffer from."[26] Finally, Plaintiff contends that Policarpio refuses to provide adequate pain control for Plaintiff's chronic severe and unrelenting shoulder and back pain, and that he has only received pain medication for thirty days out of eleven months.[27]

In addition to Policarpio's argument that the Complaint contains no specific allegations against him and fails to allege the necessary facts to support a viable Eighth Amendment claim for deliberate indifference, Policarpio asserts that even though Plaintiff claims he was unsuccessful in obtaining medical treatment, it is clear he received *some* medical assistance, given that he was prescribed medication, even if it is true that he never actually received it. Policarpio concludes that the fact that something was prescribed means Plaintiff had to have been examined by a physician at some point, *ergo:* he received treatment. This argument has little merit.  Merely because Plaintiff was

---

spondylitis, tendinitis, bursitis, gout, or menstrual cramps. <u>See</u> What is naproxen? *Available at* <u>http://www.drugs.com/naproxen html</u>

[22] Dkt.# 1-1 at 1 and Dkt.# 36, ¶20  at 5.

[23] Plaintiff's March 17, 2015 grievance over his request for treatment of chronic back and shoulder pain states "[t]he reason I asked that my records from OVMC be faxed here was to show my cronic [sic] shoulder and back problems. From the last grievance I know medical has my records, yet I continue to have cronic [sic] pain every night and no one has addressed the problem." Dkt.# 1-2 at 1.

[24] Dkt.# 36, ¶15 at 4.

[25] Dkt.# 36 at 4.

[26] Dkt.# 36, ¶24 at 6.

[27] Dkt.# 36, ¶25 at 6.

"seen" by a doctor does not mean he received treatment, given that Plainitff alleges he is not receiving the very thing the doctor prescribed: pain medication. See De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir. 2003) (finding that the fact that the plaintiff received some treatment did not mean she received treatment for a particular ailment or that the treatment was reasonable). Further, Policarpio also inexplicably contends that Plaintiff's affidavit admission "that his medical problems are recorded" is proof that Plaintiff "has been to a medical facility and notes and records have been produced."[28] However, it is apparent that when Plaintiff's affidavit is read in its entirety, the phrase Policarpio references is Plaintiff's claim that his medical problems are "well recorded" in the *records of the outside facilities where he previously received treatment*, not at SMCC. Further, Plaintiff claims that even though his outside medical records do exist, Wexford either refuses to refer to them,[29] refuses to send for them[30] or claims they cannot locate them.[31]

Here, viewing the allegations in the complaint in the light most favorable to the plaintiff, as required, it appears clear from the record that the plaintiff has sufficiently proven the objective prong necessary to prove an Eighth Amendment claim of deliberate indifference, in that his degenerative spinal conditions could be "sufficiently serious" medical needs. Wilson, *supra* at 298; see also Victoria W. v. Larpenter, *supra* at 205 F. Supp. 2d at 600-01; Murphy v. Walker, *supra* at 51 F.3d 719; Gutierrez v. Peters, *supra* at 111 F.3d 1373; Phillips v. Jasper County Jail, *supra* at 437 F.3d 796; and Walker v. Benjamin, *supra* at 293 F.3d 1040 – 41. The record as it presently stands is insufficient to determine if subjectively, Defendant Policario acted with a "sufficiently culpable mind." Given the limits of the available record at this time, the fact that bulging or herniated discs

---

[28] Dkt.# 19 at 6.

[29] Dkt.# 1-2 at 1.

[30] Dkt.# 36, ¶14 - 17 at 4 – 5.

[31] Dkt.# 1-1 at 1.

can result in profound, permanent neurological injuries which may require referral to a neurologist or neurosurgeon and possible surgery, the undersigned cannot say that with certainty whether plaintiff has a *de minimis* or serious condition. However, based upon Plaintiff' claims of repeated complaints of chronic, unrelenting, severe pain; his allegations that: his prior medical records showing documented herniated discs prior to being incarcerated have not been obtained or considered; he is losing the feeling in his legs; he has twice been prescribed an NSAID that he did not receive but was charged for, nevertheless; he has only received pain medication for one month out of eleven; and the fact that the March 25, 2015 response by defendant Milessa Wadsworth RN, HSA, to Plaintiff's grievance requesting medical care was addressed to another inmate entirely and references a visit to Policarpio that *that* inmate, and not Plaintiff, received,[32] at least *suggests* that Policarpio may have known of and disregarded a risk of harm to plaintiff's health. The record at present is insufficient to be a basis for a motion to dismiss.

### 3) **Milessa Wadsworth, RN, HSA, Wexford Health Sources, Inc.**

In the Complaint, the plaintiff specifies that he names Defendant Wadsworth in her "professional and individual capacity" as the SMCC Health Services Administrator.[33]

In his response in opposition to the Defendants Policarpio and Wadsworth's motion to dismiss, Plaintiff alleges that Wadsworth, as the SMCC "Health Services Administrator . . . [for] a short period of time after he [sic] expulsion from a previous location[,]"has been deliberately indifferent to his serious medical needs.[34]   He contends that Wadsworth, "by her past employment history, is fully aware that she is also a direct responsible party to the failure of the nursing staff to

---

[32] Dkt.# 1-2 at 3.  Plaintiff states "[i]t was stated that Lamarr had seen the doctor on February 4, 2015. Insomuch as I am not Lamarr, I did not receive treatment nor did I meet with the Doctor or receive any care for my complaint." Dkt.# 36, ¶18 at 5.

[33] Dkt.# 1 at 3.

[34] Dkt.# 36, ¶¶ 3 – 4 at 2.

deliver the medications prescribed and for the failure of her staff to follow up on the orders of the doctor, whether right or wrong."[35] He alleges that Wadsworth has failed to "follow official policy or any medical care [sic]."[36] He contends that he was denied adequate treatment and treatment for his continuous pain through a "collective effort by the Defendants and under and through the direction of the H.S.A, Defendant Wadsworth[.]"[37] Finally, Plaintiff alleges that both Policarpio and Wadsworth "merely act[] the part of competent medical professionals who create a tangible record with visits to weight or take vitals and the patients receive no competent care for the ailments they suffer from."[38]

Plaintiff contends he has filed at least four grievances over the issues in this Complaint. On January 14, 2015, he filed Grievance No. 15-SMCC-75-009, complaining of back problems and requesting treatment. He does not explain what happened with this grievance. On March 17, 2015, he filed Grievance No. 15-SMCC-76-2-14, requesting that Health Services send for his OVMC records, complaining of chronic back and shoulder pain from his herniated or bulging disc(s), degenerative disease of spine, and bone spurs in shoulder. He avers that "medical" (Wadsorth) replied to an inmate named Lashan Lamarr instead of to Plaintiff,[39] advising him that he would need to see Dr. Policarpio and that it was apparent he had been seen by Policarpio on February 4, 2015. And on a date not specified, Plaintiff filed Grievance No. 15-SMCC-76-2-69, complaining about the Naproxen being prescribed but not dispensed, and being charged for it anyway. When he returned to "medical," he was again charged for medication which was again never dispensed. Plaintiff contends that Wadsworth's response to this grievance "evades [the] subject." Finally, on April 20, 2015, Plaintiff filed Grievance No. 15-SMCC-76-2-20, complaining about the Commissioner's failure to

---

[35] Dkt.# 36, ¶9 at 3. .

[36] Dkt.# 36, ¶10 at 3.

[37] Dkt.# 36, ¶12 at 4.

[38] Dkt.# 36, ¶24 at 6.

[39] The grievance response has Plaintiff's grievance number on it.  See Dkt.# 1-2 at 3.

respond to his grievances regarding his medical care in accordance with the WVDOC's Grievance Policy.  He alleges that this grievance was never answered.

Here, viewing the allegations in the complaint in the light most favorable to the plaintiff, as required, it appears from the record that the plaintiff has sufficiently proven the objective prong necessary to prove an Eighth Amendment claim of deliberate indifference, in that his degenerative spinal conditions could be "sufficiently serious" medical needs. Wilson, *supra* at 298; see also Victoria W. v. Larpenter, *supra* at 205 F. Supp. 2d at 600-01;  Murphy v. Walker, *supra* at 51 F.3d 719;  Gutierrez v. Peters, *supra* at 111 F.3d 1373; Phillips v. Jasper County Jail, *supra* at 437 F.3d 796; and Walker v. Benjamin, *supra* at 293 F.3d 1040 – 41. However, as noted *supra,* the present record is insufficient to determine if subjectively, Wadsworth acted with a "sufficiently culpable mind." Again, given the limits of the record at this time, the fact that bulging or herniated discs can cause profound, progressive, and possibly permanent neurological injury, requiring neurology or neurosurgery referral and possible surgery, the undersigned cannot say that with certainty whether plaintiff has a *de minimis* or serious condition. However, again, as noted *supra,* based upon Plaintiff' claims that his repeated requests for treatment of his chronic, unrelenting, severe pain have been ignored; his allegations that: his prior medical records documenting herniated discs prior to being incarcerated have not been obtained or considered; his allegation that he is losing the feeling in his legs; has been prescribed medications that he has not received; has only received pain medication for one month out of eleven; and Wadsworth's March 25, 2015 response to his grievance, indicating at the very least, that she was unaware that she was addressing the medical care  *another*  inmate, not the Plaintiff, received, at least *suggests* that Wadsworth may have known of and disregarded a risk of harm to plaintiff's health. The record at present is insufficient to be a basis for a motion to dismiss.

## C.  Medical Negligence

In their dispositive motion, Defendants Policarpio and Wadsworth argue that Plaintiff's Complaint should be dismissed for its failure to comply with the WVMPLA, by filing a pre-suit

Notice of Claim thirty days before filing suit, and by providing expert testimony to prove his claims. Plaintiff's response in opposition specifically denies that he is making a claim for medical negligence and reiterates that he is making a claim of deliberate indifference.[40]

To establish a medical negligence claim, a plaintiff must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> § 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was

---

breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[41]

Here, Defendants' Policarpio and Wadsworth's claim has no support in the record. It is apparent that Plaintiff's claims are claims of deliberate indifference, arising under the Eighth Amendment, thus, compliance with the WVMPLA is unnecessary.

## V. <u>Recommendation</u>

In consideration of the foregoing, it is the recommendation of the undersigned that the defendants' dispositive motions (Dkt.# 14 and 18) be **GRANTED in part** as to Defendants Mirandy and Rubenstein and **DENIED in part** as to Defendants Policarpio and Wadsworth, that Defendants Mirandy and Rubenstein be **DISMISSED** from this action, and that a scheduling Order be entered.

**Within (14) fourteen days after being served with a copy of this Report and Recommendation**, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based on such Recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

---

[41] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

DATED:  April 13, 2016

/s/   James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE